```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   JASON NIETO,                                             :
                                                            :   **MEMORANDUM DECISION**
                                        Plaintiff,          :   **AND ORDER**
                                                            :
              - against -                                   :   20-cv-3138 (BMC)
                                                            :
   COMMISSIONER OF SOCIAL                                   :
   SECURITY,                                                :
                                                            :
                                        Defendant.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he can perform sedentary work with restrictions and thus is not entitled to disability insurance benefits under the Social Security Act. Plaintiff previously had spinal fusion surgery on his lower back.

The Commissioner's position is not well-founded. There is no reasonable way to view this record except to find that plaintiff cannot perform sedentary work. In addition, the ALJ committed legal error in relying on the vocational expert's testimony, and the Commissioner did not alternatively request a remand to correct the error. Because of that, the Commissioner has not carried his burden at step five of the sequential analysis to show that there are jobs plaintiff can perform in the national economy with his restrictions even if he had the residual functional capacity to perform sedentary work. The case is therefore remanded solely for the purpose of calculating benefits.

I.      **The Medical Evidence Points Ineluctably to Disability**

Both plaintiff's physician, Dr. Russell Silver, who meets all the criteria for heavily weighing a treating physician's opinion (like longitudinal relationship and specialty), and the consultative examiner to whom the Commissioner referred plaintiff, Dr. Alex Perdomo, opined that plaintiff could stand and walk for less than three hours in a workday and could sit for less than six hours in a workday.  Specifically, Dr. Silver estimated that plaintiff could stand and walk for less than two hours and could sit for less than six hours, while Dr. Perdomo opined that plaintiff could stand and walk for two to three hours and could sit for three to four hours.  These numbers mean plaintiff cannot do sedentary work.  See 20 C.F.R. § 404.1567; SSR 83-10, 1983 WL 31251, at *6 (1983) (stating that sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday).  Dr. Silver's opinions were backed up by his repeated physical and range of motion examinations, his review of treatment notes from plaintiff's prior back surgery, his references to an MRI showing disc bulges and protrusions in plaintiff's neck, and his references to nerve testing reports showing lumbosacral radiculopathy, that is, radiating pain due to a pinching of the nerve root in the lower back.  Dr. Perdomo's conclusions were backed up by his own physical examination and range of motion testing also showing significant limitations, including plaintiff's inability to squat or stand on his toes or heels.  We thus have both the treating physician and the consultative examiner opining to a residual functional capacity that is insufficient for sedentary work.

The ALJ decided to afford Dr. Silver's opinions "little weight" because "they [were] not supported by his own physical examination findings, the objective medical findings in evidence, or any other evidence in the record."  The ALJ didn't say expressly how Dr. Silver's opinions were deficient beyond this conclusion, and because of the details of Dr. Silver's work with plaintiff set forth in the record and recited by the ALJ, I cannot find a basis for that conclusion.  I

think the results of Dr. Silver's physical examination and his report on the objective medical findings fully support his opinion on plaintiff's residual functional capacity. The only ambiguity is that the MRI and nerve testing reports cited by Dr. Silver are not in the record. However, if the ALJ really thought that Dr. Silver was dissembling about the existence or contents of those reports – despite the specificity of his references to them – the ALJ should have made more effort to develop the record by getting them or referring plaintiff out to repeat those tests.

The ALJ said that he was giving "significant weight" to Dr. Perdomo's opinions because they were "supported by his own examination findings and the overall medical evidence in the record, except the overall evidence in the record . . . shows that [plaintiff] is able to sit at least 6 hours in an 8 hour work day." What this meant as a practical matter was that the ALJ accepted Dr. Perdomo's opinions except for his opinion on plaintiff's residual functional capacity – *i.e.*, plaintiff's ability to do sedentary work. That opinion, of course, is the most important opinion that Dr. Perdomo gave and the culmination of the physical examination findings that he set forth. In addition, Dr. Perdomo's opinion on plaintiff's residual functional capacity was not all that different from that of Dr. Silver. As noted above, the amount of time that each of them thought plaintiff could stand, walk, or sit does not meet the requirements for sedentary work.

The ALJ instead preferred the opinion of a non-examining physician, Dr. S. Ahmed, the State agency medical consultant. (As is typical for the disability application review physician, we don't know his or her first name or specialty.) Dr. Ahmed thought that plaintiff could sit for "about 6 hours" and could stand and walk for four hours in a workday and thus could perform sedentary work. The problem with Dr. Ahmed's opinion, however, is that Dr. Ahmed never set eyes on plaintiff, and the timing of the opinion means that Dr. Ahmed never even saw Dr. Silver's report – as Dr. Ahmed stated, "There is no indication that there is a medical opinion

3

from any medical source." The cases are clear about the limited value of opinions by non-examining consultants, see, e.g., Littlejohn v. Colvin, No. 16-cv-3380, 2017 WL 1049505, at *5 (E.D.N.Y. March 18, 2017), and here, Dr. Ahmed didn't even have the complete records on which to base an opinion.[1]

On this record, a reasonable fact-finder would have to conclude that plaintiff did not have the residual functional capacity to perform sedentary work. As a matter of law, plaintiff therefore met his burden of proof through step four of the five-step sequential analysis.

**II.     The Vocational Expert's Testimony was Inadequate**

I agree with plaintiff that this case falls within the Second Circuit's recent holding in Lockwood v. Commissioner of Social Security Administration, 914 F.3d 87 (2d Cir. 2019). There, a vocational expert testified to three jobs that the plaintiff could supposedly perform even though his impairments required him to "avoid all overhead reaching tasks." Id. at 92. However, the vocational expert did not consider that the Dictionary of Occupational Titles ("DOT") established that each of the jobs required "reaching," id. (quotations omitted), and a Social Security Program Policy Statement had defined "reaching" to mean "extending the hands and arms in *any* direction," SSR 85-15, 1985 WL 56857, at *7 (1985) (emphasis added). As plaintiff emphasizes, this same definition appears in a companion publication to the DOT, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). See SCO, Appendix C, at C-3.

---

[1] Perhaps the strongest medical evidence supporting the ALJ's decision was the fact that after plaintiff's spinal fusion surgery in June 2014, there was an eighteen-month gap in treatment between July 2015 and February 2017. At the February 2017 appointment, the surgeon who performed the fusion surgery, Dr. William Kennedy Main, reported that plaintiff was "doing fairly well post-operatively despite the residual symptoms reported." That statement isn't very probative, however, for at least three reasons. First, "fairly well" is a relative term in this context – plaintiff was doing "fairly well" considering he had undergone major surgery. Second, Dr. Main also consistently noted that plaintiff was having very serious pain and put him on Vicodin. Third, Dr. Main did not give any indication of plaintiff's residual functional capacity.

4

Thus, in Lockwood, there was a potential conflict between the vocational expert's testimony and the DOT. In these situations, the Second Circuit explained, an ALJ has "an affirmative responsibility to ask about any possible conflict" and "elicit a reasonable explanation" before relying on the vocational expert's testimony. Lockwood, 914 F.3d at 91 (quoting SSR 00-4p, 2000 WL 1898704, at *2, 4 (2000)). Because the ALJ had failed to inquire and resolve that conflict, the court remanded the case.

The same situation obtains here. The ALJ recognized that plaintiff could do no overhead reaching. Yet the vocational expert testified that the DOT does not address overhead reaching. That was wrong, and frequent reaching is required for all three jobs that the vocational expert testified that plaintiff could perform. See DOT 209.587-010, 1991 WL 671797 (addresser); id. 249.587-018, 1991 WL 672349 (document preparer); id. 731.685-014, 1991 WL 679811 (stuffer). Thus, there was an unresolved conflict between the DOT and the vocational expert's opinion that precluded the ALJ from relying on that opinion without further inquiry.

The Commissioner's attempts to distinguish Lockwood are wholly unconvincing. The Commissioner first argues that a vocational expert need only consider the DOT and not the SCO. But Lockwood drew no distinction between the two. See 914 F.3d at 90 n.2. Lockwood also relied on a Social Security Ruling stating that ALJs must:

> Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles (DOT), *including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 WL 1898704, at *1 (emphasis added). Finally, Lockwood drew its definition of "reaching" primarily from a Social Security Program Policy Statement, not the SCO. See 914 F.3d at 92 (citing SSR 85-15, 1985 WL 56857, at *7).

5

The Commissioner next argues that the ALJ conducted "further inquiry" and any conflict was in fact resolved. But the Commissioner relies on routine, generic questions. At the start of the vocational expert's testimony, the ALJ asked, "[I]f any time today your testimony is inconsistent with the DOT and associated publications, will you point out the inconsistency and explain how you resolved it?" The vocational expert answered, "I will." Later, the ALJ asked, "And how did you arrive at your answers?" The vocational expert responded, "Judge, that is considerations [sic] based on my knowledge and experience in the vocational field." These kinds of vague questions and answers are not enough under Lockwood – it held that the procedure that must be used to resolve the conflict is that the ALJ must first expressly recognize the conflict and then elicit a specific basis from the vocational expert that reconciles it. See id. at 93–94. That did not happen here. Therefore, even if plaintiff had the residual functional capacity to perform sedentary work, the vocational expert's testimony would not provide substantial evidence that plaintiff can perform work available in the national economy.

## III. Remand Only for the Calculation of Benefits

I am remanding only for the calculation of benefits for two reasons, both suggested above. First, I do not see a reasonable way of interpreting the medical evidence – consistent with the treating physician rule – except to support a finding of disability. See Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (stating that remand solely for the calculation of benefits is appropriate when the court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision"); Steficek v. Barnhart, 462 F. Supp. 2d 415, 421–22 (W.D.N.Y. 2006) (collecting cases that remanded solely for the calculation of benefits where the record "need[ed] no further development" and compelled the conclusion that the plaintiff was disabled).

Second, the Commissioner has not alternatively requested a remand for reconsideration of the vocational expert's inadequate testimony. That was the result in <u>Lockwood</u>, where the Second Circuit remanded to have the ALJ further inquire about the conflict between the vocational expert's testimony and the DOT. That result is not warranted here because in <u>Lockwood</u>, the ALJ found that the plaintiff "retained the ability to perform light work that did not require any overhead reaching," which suggested that resolving the conflict between the DOT and the vocational expert's testimony would allow the Commissioner to satisfy his burden at step five of the sequential analysis. 914 F.3d at 89. Here, however, the only reasonable view of the record is that plaintiff lacks the residual functional capacity to perform sedentary work. Such an individual is not able to work – even the vocational expert testified that there were no jobs for someone who could walk or stand for no more than two hours and sit for only two hours of an eight-hour workday.

In this situation, remand solely for the calculation of benefits is appropriate. Cf. <u>Butts v. Barnhart</u>, 416 F.3d 101, 104 (2d Cir. 2005) (stating that remand for calculation of benefits was "hardly out of the question" where the Commissioner erred at step five); <u>Nagle v. Colvin</u>, No. 5:11-cv-855, 2014 WL 2815780, at *28 (N.D.N.Y. June 23, 2014) (remanding for calculation of benefits where "the Court f[ound] no record evidence that [the] plaintiff [was] capable of doing any substantial gainful activity" and "the testimony of the Commissioner's vocational expert . . . establishe[d] as a matter of law that an individual with [the] plaintiff's RFC is unable to work").

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings [12] is granted, and the Commissioner's motion for judgment on the pleadings [15] is denied. The final

decision of the Commissioner is reversed, and the case is remanded under sentence four of 42 U.S.C. § 405(g) solely for the calculation of benefits.

**SO ORDERED.**

                                                Digitally signed by Brian M. Cogan
                                                _____
                                                                               U.S.D.J.

Dated:  Brooklyn, New York
         May 5, 2021